## Kentucky Home Mut. Life Ins. Co. v. Marshall.

March 3, 1942.

As Modified on Denial of Rehearing June 9, 1942.

Crawford & Meadows, Woodward, Dawson & Hobson and L. H. Hilton for appellant.

Frank J. Hanlon for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The Kentucky Home Mutual Life Insurance Company issued a group insurance policy to the Transportation Benefit Association on June 9, 1936. The then members of the Association were issued insurance certificates subject to the terms of the group policy. That policy

contains the following provision relating to the coverage of new members of the Association:

"Upon approval of such application by the Company and payment of the advance premium to cover, new members will be insured hereunder. * * *

"The insurance on the life of each respective member so applied for shall become effective at Noon, Central Standard Time on the date of each individual certificate issued in accordance herewith, provided, the application shall have been accepted by the Company and the advance premium as determined by the Company shall have been paid in cash at the Company's Home Office."

The application for membership in the Association provides:

"(1) That said Association may apply for insurance on my life, as stated below, to the Company which has issued a group policy of life insurance to the Association.

"(2) That said Association may pay the premiums on any such insurance issued on my life, out of my dues and deposits paid and to be paid to the Association;

"(3) That this application and all representations herein shall form the basis of any insurance issued to me under said group policy and that all said statements, representations and answers are full, complete and true."

On February 13, 1939, John Marshall made written application for membership in the Association on its regular form. The sum of $6 was collected from him at that time. The application and the $6 were mailed direct to the Insurance Company and received by it on February 18th. The Company notified the Association of their receipt and sent the $6 to it. On February 21st, the Company approved Marshall's application for insurance, subject to the terms and conditions of the master policy. On February 23rd, a certificate was issued to him bearing date of March 9th, and was delivered to the Association. Marshall died on March 8th. Mrs. Marshall, the beneficiary under the policy, instituted this action seeking a reformation of the certificate so as to make it bear the date of February 23, 1939, rather than March 9, and

for a judgment against the Company for $1,000, the amount of the certificate. The Company demurred to the petition on the ground that it did not state facts sufficient to warrant a reformation of the certificate. This demurrer was overruled. After the filing of several motions and amended pleadings, the trial court sustained a demurrer to the second paragraph of the Company's answer, and upon its declining to plead further judgment was entered reforming the certificate according to Mrs. Marshall's prayer, and upon the certificate as reformed judgment was entered in her favor in the sum of $1,000.

The Company is insisting upon a reversal of the case upon the grounds that a demurrer should have been sustained to Mrs. Marshall's petition and error was committed in sustaining the demurrer to the second paragraph of its original answer and to its second amended answer.

We will discuss the second ground first. In substance the Company's answer and the second amendment thereto set forth that on June 9, 1936, the Company issued to the Association a master group insurance policy under which it agreed to insure the lives of the then members of the Association beginning with the date of the master policy and for the coverage of future members of the Association; and that it was agreed between it and the Association that the effective date of the insurance on the lives of new members of the Association would be the 9th day of the month following the individual applications if they were approved and the premiums paid. The answer also set out the provisions of the master policy and the application form which we have heretofore noted, and further that: The $6 collected from Marshall covered his initiation fee in the Association, the dues therefor and a sufficient sum to pay three months premium on his certificate in the event the Company insured his life; the Company approved Marshall's application for insurance, which insurance was to become effective March 9, 1939, provided the necessary premium was paid to it by the Association; in conformity with the agreement between the Company and the Association with respect to the dating of an individual certificate on the 9th of the month immediately succeeding the date on which such application for insurance was approved, the Company issued and delivered to the Association for delivery to Marshall on March 9, 1939, a cer-

tificate so dated, and to be delivered to him on that date; no premium has ever been paid to the Company in connection with Marshall's certificate; he died on March 8th; and the certificate did not and could not have become effective until the following day.

The Company insists that it was error to sustain a demurrer to its answer as amended because it set forth the provision of the master policy and Marshall's application for insurance under it, which set forth that a certificate would be issued only on the approval by it of his application and the payment of the first premium, and further that the master policy stipulated that the insurance on the life of each member so applied for shall become effective at noon on the date of each individual certificate. We have noted that the Company dated Marshall's certificate March 9, 1939, and it is obvious that it is relying upon its alleged agreement with the Association that the certificates of new members shall become effective on the 9th of the month following the date of their applications, dependent, of course, upon the payment of the premiums. It is to be noted that there is nothing contained in the master policy, or the applications of new members of the Association, as to the time premiums are to be paid. There is a provision in the policy as to the manner in which its conditions may be changed; but no change has been made as to the time of paying premiums. Certainly Marshall was bound by the conditions of the master policy contracted for by the Company and the Association; but the question is, was there anything in it to put him on notice that his insurance was not to become effective until the 9th day of the month following the time he made his application, paid his initiation fee, dues and three months' advance insurance premium? We think he had a right to believe, when he made his application and paid his money, that his application would be sent to the Insurance Company in a reasonable time, and that upon its approval his certificate would be issued and become effective under the terms of the master policy.

While an issue is made as to the question of the Association being an agent of the Company, we have no hesitancy in saying that it was performing services for both Marshall and the Company with their knowledge and consent. The Association collected premiums for the Company, accepted applications for insurance for it,

collected premiums from old members and prospective members for it, while at the same time it performed services for its members. The case is different from the one relied upon by the Company, Equitable Life Assurance Soc. of United States v. Hall, 253 Ky. 450, 69 S. W. (2d) 977, wherein there were involved the relationships between an insurance company and an employer and its employees. We think that Marshall did everything that it was possible for him to do. He paid his initiation fee, dues and advance premiums, and made out his application for insurance which was sent to the Company and approved by it on February 21st. The advance premiums were in the hands of the Association, and as a matter of fact had actually been in the hands of the Company at one time; but, as we have noted, were forwarded by it to the Association. In view of these circumstances, and for the reasons indicated, we think the trial court properly sustained a demurrer to the second paragraph of the Company's answer as amended.

We turn now to the question of the Company's demurrer to Mrs. Marshall's petition. It is insisted that an insurance contract can be reformed only because of mutual mistake of the parties, or mistake, inadvertence or accident on one side, and fraud or negligible conduct on the other, Flimin's Adm'x v. Metropolitan Life Ins. Co., 255 Ky. 621, 75 S. W. (2d) 207, and that Mrs. Marshall's petition did not allege facts sufficient to meet either proposition. We think otherwise. The petition set forth the time and manner in which Marshall applied for membership in the Association, and for insurance, and all the dates and transactions which we have heretofore reviewed in connection with the policy. It was alleged also that the policy became effective on February 23, 1939, the date it was issued by the Company and delivered to the Association, and that the Company wrongfully and without legal right postdated the certificate to March 9th. The Company insists that the allegations just mentioned were only conclusions of the pleader, and also that at most the petition shows only a unilateral mistake on the part of Marshall. Such a mistake is not a ground for reformation. Kentucky Title Company v. Hail, 219 Ky. 256, 292 S. W. 817. We are not in accord, however, with the Company's interpretation of the petition to the effect that it is impossible to determine whether Mrs. Marshall sought a reformation of the contract on the ground of a mutual mistake, or on the

126

ground of fraud or inequitable conduct on the part of the Company. It is our view, when the petition is examined as a whole, that there was a charge of inequitable conduct on the part of the Company in postdating the certificate. We have already pointed out that the Company had no right to do this, under the circumstances, though it must be admitted that the master policy could be so amended or changed as to permit the postdating of certificates in the future. We do not mean to say that the Company maliciously singled out Marshall and deliberately perpetrated a fraud upon him, but rather that the mistaken belief on the part of the Company that it could postdate policies brought about an inequitable result in so far as new members were concerned. This constituted inequitable conduct on the part of the Company, and, as indicated, we think the petition alleged facts which warranted the reformation of the certificate. We have already indicated that Marshall had every right to believe, and certainly he did believe, that his insurance would become effective upon the approval of his application and the payment of his advance premium. As we have noted, the master policy provided, "Upon the approval of such application by the Company and payment of the advance premium to cover, new members will be insured hereunder."

Wherefore, the judgment is affirmed.

Whole Court sitting.